## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAMES Y. A. WANG, Executor of**
**the Estate of IRENE WANG, et al.,**

    **Plaintiffs,**

v.                                                                          Case No.  8:05-cv-1924-T-30MSS

**UNITED STATES OF AMERICA, et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon United States of America's Motion to Dismiss Counterclaim of Third-Party Defendant Dean Petkanas (Dkt. #34), Dean Petkanas' Motion in Opposition to Motion to Dismiss (Dkt. #61), and Dean Petkanas' Notice of Supplemental Authority (Dkt. #63).  The Court, having reviewed the motion, response, memoranda, and being otherwise advised in the premises, finds that United States of America's Motion to Dismiss the Counterclaim of Third-Party Defendant Dean Petkanas should be granted.

### Background.

On September 8, 2005, Plaintiff, Irene Wang, sued the United States in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida, seeking a declaratory judgment regarding Irene Wang's interest in the Tocobaga property.  In the Complaint, Plaintiff asserts that her ownership interest in the Tocobaga property was greater

than that of Victor Wang, as a result of a quit claim deed and her investment of money in the property.[1]  On March 28, 2002, after Victor Wang pled guilty to conspiracy to commit securities fraud but prior to sentencing, Victor Wang executed a quit-claim deed conveying his interest in the Tocobaga property to himself and his mother, Irene Wang, as joint tenants with right of survivorship.  Irene Wang died on September 16, 2005.  Thus, James Wang, as the executor of the estate of Irene Wang, filed an amended complaint seeking declaratory judgment relief on behalf of Irene Wang's estate.

On October 14, 2005, the United States removed the action to this Court.  On November 21, 2005, the United States filed its Answer, Counterclaim and Third-Party Complaint.  In addition to Counterclaims against Irene Wang, the answer asserted third-party claims against Victor Wang and James Wang, the widower of Irene Wang.  In the Counterclaim and Third-Party Complaint, the United States asserts, among other claims, that Victor Wang's transfer by quitclaim of an interest in the property to Irene Wang on March 28, 2002, was a fraudulent conveyance.

In furtherance of this position, the United States sought an order of foreclosure upon the Tocobaga property.  In the foreclosure proceedings, the United States also named

---

[1] On August 19, 1999, and January 19, 2001, Victor Wang pled guilty to conspiring to commit securities fraud and engaging in monetary transactions involving funds derived from the fraudulent sale of securities in Case Nos. CR-99-0753 and CR-00-1119, respectively. On December 13, 2002, Victor Wang was sentenced jointly in CR-99-0753 and CR-00-1119, and ordered to pay restitution in the amount of $11,129,582.00.  The judgment created a lien in favor of the United States against all property of Victor Wang, pursuant to 18 U.S.C. §3613. On January 16, 2004, the United States filed a notice of lien with the Clerk of Court in Sarasota County.  The lien encumbers the real property located at 1001 Tocobaga Lane, Sarasota, Florida (the "Tocobaga property").

Emigrant Mortgage Co., Inc. ("Emigrant"), Wachovia Bank, N.A. ("Wachovia"), and Dean Petkanas ("Petkanas"), as third-party defendants. Emigrant held the first mortgage on the Tocobaga property. Wachovia held the second mortgage on the Tocobaga property. Petkanas was thought to have occasionally stayed at the Tocobaga property. Accordingly, the United States did not assert claims against Emigrant, Wachovia, or Petkanas. Rather, these third-party defendants were named as entities that may claim some interest in the property. More specifically, Petkanas was merely named as a possible tenant.

On November 29, 2005, the Tocobaga property was sold to an independent buyer, Michael Vaccaro. Petkanas moved out of the Tocobaga property upon the sale of the property. The Emigrant and Wachovia mortgages were both satisfied by payments tendered at the closing of the sale. The net proceeds of the sale, in the amount of $1,010,778.76, have been deposited with the Clerk pending a resolution of the dispute among the Wangs and the United States as to the interest, if any, of Irene Wang's estate in the property.

Once the sale was completed, it was no longer necessary to bring a foreclosure action or include Emigrant, Wachovia or Petkanas in such proceedings. As a result, the United States did not apply to the Clerk to issue a summons as to Petkanas, nor did the United States serve Petkanas.

Nevertheless, without being served with the United State's Third-Party Complaint for foreclosure, on December 31, 2005, a month after the property was sold, Petkanas filed a *pro*

*se* Notice of Appearance, Demand for Jury Trial and Answer, Counterclaim and Cross-Claim in response to the Third-Party Complaint filed by the United States.[2]

**Dismissal of Petkanas' Counterclaims Pursuant to Rule 12(b)(1) and 12(b)(6).**

Petkanas' Counterclaim against the United States asserts numerous claims against the United States based on theories of unjust enrichment, interference with a third-party contract, inequitable conduct, and quantum merit. The United States seeks to dismiss Petkanas' Counterclaim against the United States for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Additionally, the United States moves to strike Petkanas' jury demand and to strike an exhibit to the Petkanas Pleading, pursuant to Fed.R.Civ.P. 12(f).

**Motion to Dismiss Standard Under 12(b)(1).**

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. Lawrence v. Dunbar, 919 F.2d 1525 (11th Cir. 1990). "Facial attacks" on the complaint "require the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." See id. at 529. "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." See id.

---

[2] The Court notes that Petkanas' *pro se* Notice of Appearance, Demand for Jury Trial and Answer, Counterclaim and Cross-Claim in response to the Third-Party Complaint filed by the United States is 103 pages long and contains 375 paragraphs.

These two forms of attack differ substantially. "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true." Id. at 529. "But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

Finally, a federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction. Local Div. 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid, 667 F.2d 1327, 1331 (11th Cir. 1982), citing Marshall v. Gibson's Products, Inc. Of Plano, 584 F.2d 668, 672 (5th Cir. 1978).

**Discussion.**

**I.  Petkanas' Counterclaims are not compulsory.**

Fed.R.Civ.P. Rule 13(a) defines a compulsory counterclaim as any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Republic Health Corp. v. Lifemark Hospitals, 755 F.2d 1453, 1455 (11th Cir. 1985), citing Plant v. Blazer Financial Services, Inc., 598 F.2d 1357, 1361 (5th Cir. 1979). In the Eleventh Circuit, a counterclaim is compulsory if it satisfies the "logical relationship" test. Republic

Health, 755 F.2d 1453, 1455. Under the "logical relationship" test, a logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant in the defendant."

Petkanas' counterclaims do not arise out of his interests as a tenant or lessee of the property or other valid property interest or encumbrance, i.e. a mechanic's lien or judgment lien. Rather, Petkanas' counterclaims appear to be based on an oral contract that he had with the Wang family. Petkanas claims that he worked as an "independent contractor" for Irene Wang, James Wang, Victor Wang, and his brother, Jason Wang. Petkanas claims that he is entitled to compensation for hours he worked and expenses he incurred in preparing the Tocobaga property for sale. Petkanas further claims that the United States interfered with his agreements with the Wangs and prevented him from obtaining payment to which he was entitled. This Court concludes that Petkanas' Counterclaims and the United States Third-Party Complaint do not "arise out of the same operative facts."

**II.   Lack of Subject Matter Jurisdiction.**

The United States argues that Petkanas' Counterclaim against it must be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. Rule 12(b)(1).

**A.    United States is immune from suit under the doctrine of sovereign immunity.**

As sovereign, the United States is "immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to

entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); see also United States v. Testan, 424 U.S. 392, 399 (1976); Mid-South Holding Co. v. United States, 255 F.3d 1201, 1203 (11th Cir. 2000).  When the United States waives immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." United States v. Mitchell, 445 U.S. 535, 538 (1980).

Even where the United States itself has initiated the legal action, by filing suit, it waives sovereign immunity as to counterclaims that the defendant may assert only to the extent of defeating the Government's claim.  Frederick v. United States, 386 F.2d 481, 488 (5th Cir. 1967); United States v. Timmons, 672 F.2d 1373, 1379-80 (11th Cir. 1982.)  Thus, a defendant may only bring compulsory counterclaims to the Government's suit.

**B.    Petkanas Failed To Exhaust Administrative Remedies under the FTCA.**

Petkanas' Counterclaims based on tortious conduct on the part of the United States, include: inequitable conduct, failure to use due care, failure to use proper discretion and interference with contract.

The Federal Torts Claim Act (FTCA) created a limited waiver of sovereign immunity, making the United States liable "to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976); see 28 U.S.C. §§1346(b)(1) and 2674.  The FTCA provides a remedy for claimants against the United States for damage to or loss of property, caused by the negligent wrongful act or omission of any employee of the Government while acting

within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §2671. The FTCA specifically states that a plaintiff's exclusive course of action under the FTCA is against the United States and grants federal employees absolute immunity from common law tort actions by providing for the substitution of the United States as the sole defendant in such actions. 28 U.S.C. §2679(a). Absent a specific waiver, sovereign immunity shields the federal government, its agencies and employees from suit.

There are a number of statutory and judicial exceptions to the waiver of sovereign immunity in the FTCA. For example, Section 2680 specifies several exceptions to the FTCA, including exceptions for discretionary functions, misrepresentations, deceit, interference with contract rights, and intentional torts. §2680(a), (h); see Monzon v. United States, 253 F.3d 567, 570 (11th Cir. 2001); see also JBP Acquisitions, LP v. United States, 224 F.3d 1260, 1263 (11th Cir. 2000). If the claim comes within any of those exceptions, the Court is without subject matter jurisdiction to hear the case. Byrd v. United States, 668 F.Supp. 1529 (M.D. Fla. 1987); Stanley v. Central Intelligence Agency, 639 F.2d 1146 (5th Cir. 1981).

Furthermore, Section 2675(a) of the FTCA contains an express exhaustion requirement, which states:

> An action shall not be instituted upon a claim against the United States for money damages, for injury or loss of property, or personal injury or death, caused by the negligent or wrongful act or omission of any employee of the

> Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.[3]

Under the provisions of Section 2675, one of the express conditions for invoking a federal court's jurisdiction over a federal tort claim is the filing of a written administrative claim by the plaintiff. The filing and perfection of an administrative claim is an absolute prerequisite to maintaining an action under the FTCA; it is jurisdictional and cannot be waived. Blain v. United States, 552 F.2d 289, 291 (9th Cir. 1977).

In the instant case, Petkanas did not file an administrative claim with the Government prior to bringing this suit. Further, Petkanas' claims of misrepresentation or interference with contractual rights against the Government fall within the scope of the exceptions provided by Section 2680 of the FTCA. Accordingly, this Court lacks jurisdiction to consider any claims by Petkanas based on the theory of tort.

**C.   Court lacks jurisdiction to consider Petkanas' breach of contract claims against the United States.**

The Tucker Act, 28 U.S.C. §1346(a), waives sovereign immunity for some suits against the United States based upon claims grounded in an express or an implied contract. Under the Tucker Act, federal district courts have concurrent jurisdiction with the United

---

[3] 28 U.S.C. §2675(a) (emphasis added.)

States Court of Federal Claims to the extent that damages do not exceed $10,000. However, jurisdiction over contract claims for more than $10,000 lies exclusively in the United States Court of Federal Claims. See Friedman v. U.S., 391 F.3d 1313, 1315 (11th Cir. 2004); see also 28 U.S.C. §1491(a)(1). Accordingly, "a plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleading in terms that would enable a district court to exercise jurisdiction under a separate statute." Friedman at 1315, citing Megapulse, Inc. v. Lewis, 672 F.2d 959, 967 (D.C. Cir. 1982).

In his Counterclaim, Petkanas asserts damages for breach of contract by the Government in the amount of $250,000. However, Petkanas does not plead that a contract was entered into by and between the Government and Petkanas. Rather, Petkanas pleads that the "Government's lack of intervention and subsequent claims of interest in the proceeds from the sale of the Tocobaga Property" form an "admission of acceptance for all professional services performed by Petkanas."[4] Such assertions are insufficient to state a cause of action based on a breach of contract theory.[5] To the extent Petkanas intended to plead a breach of contract action against the Government, such action would exceed $250,000 and this Court would lack jurisdiction over Petkanas' claims.

---

[4] Dkt. #11-12, Page 78.

[5] Under Florida law, the elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999), citing Abruzzo v. Haller, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992).

**D.     Court lacks jurisdiction to consider Petkanas' unjust enrichment claims.**

The Eleventh Circuit has described unjust enrichment as an equitable claim based on a contract implied by law. Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805-06 (11th Cir. 1999). This Court does not have jurisdiction over claims based upon contracts implied by law. Mitchell, 463 U.S. 206; see, e.g. United States v. $30,00625 In Us. Currency, 236 F.3d 614-15 (10th Cir. 2000) (no general waiver of sovereign immunity for unjust enrichment claims); see also Westbay Steel, Inc. v. United States, 970 F.2d 648, 651 (9th Cir. 1992) (FTCA does not contain a waiver of sovereign immunity for equitable claims). Further, Petkanas has not argued that the United States has consented to be sued for unjust enrichment claims under state law, and under federal law there does not appear to be any waivers of the United States' sovereign immunity for such claims. See Chem-Nuclear Systems, Inc. v. Arivec Chemicals, Inc., 978 F.Supp. 1105, 1110 (N.D. Ga. 1997). Accordingly, this Court lacks jurisdiction to consider Petkanas' claims under the theory of unjust enrichment, and therefore, Petkanas' unjust enrichment claims must be dismissed with respect to the United States.

**E.     Court lacks jurisdiction to consider quantum meruit claims.**

The Eleventh Circuit has stated that claims seeking the remedy of quantum meruit are derived from contracts implied-in-fact. Tooltrend, 198 F.3d at 806. Jurisdiction to consider an implied-in-fact contract in which the claimant seeks damages in excess of $10,000 lies with the Court of Claims. Friedman, 391 F.3d 1313, 1315. Accordingly, since Petkanas

seeks damages in excess of $10,000, this Court lacks jurisdiction over his quantum meruit claims. Thus, Petkanas' quantum merit claims must be dismissed as to the United States.

**Voluntary Dismissal Pursuant to Rule 41(a)(2).**

Within its Motion to Dismiss Petkanas' Counterclaim against the United States, the United States incorporates a request for voluntary dismissal of its Third-Party Complaint against Emigrant, Wachovia and Petkanas, arguing that since the property in question has been sold to a third party, Petkanas rights as a tenant, if any, have been extinguished. As a result, the United States' foreclosure action is moot. The United States requests that the Court permit it to dismiss its Third-Party Complaint against Petkanas, pursuant to Fed.R.Civ.P. 41(a)(2).

Petkanas was named as a third-party defendant to the United States' foreclosure action, because Petkanas was thought to be an occasional tenant at the Tocobaga property. Eight days after filing the Third-Party Complaint, the Tocobaga property was sold and the United States was no longer concerned with issues of occupancy. As a result, the United States' Third-Party Complaint is moot as to Petkanas. Furthermore, a summons was not issued by the Clerk as to Petkanas, nor was Petkanas served with the Third-Party Complaint by the United States.

Rule 41(a)(2) states, in pertinent part:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's

objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Upon a review of the record, the Court concludes that the Third-Party Complaint filed by the United States is moot. Accordingly, the United States' motion for voluntarily dismissal of its Third-Party Complaint as to Petkanas should be granted pursuant to Fed.R.Civ.P. Rule 41(a)(2).

It is therefore ORDERED AND ADJUDGED that:

1. United States of America's Motion to Dismiss Counterclaim of Third-Party Defendant Dean Petkanas (Dkt. #34) is GRANTED.

2. Dean Petkanas' Counterclaims brought against the United States of America are dismissed in their entirety for lack of subject matter jurisdiction.

3. United States of America's Motion to Voluntarily Dismiss its Third-Party Complaint against Emigrant, Wachovia and Dean Petkanas is GRANTED without prejudice.

**DONE** and **ORDERED** in Tampa, Florida on July 7, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1924.dismiss petkanas.wpd