UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JAMES Y. A. WANG, Executor of
the Estate of IRENE WANG, et al.,**

    **Plaintiffs,**

v.                                                                Case No.  8:05-cv-1924-T-30MSS

**UNITED STATES OF AMERICA, et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon the Motion for Summary Judgment filed by Victor Wang, James Wang, and James Y.A. Wang, as Executor of the Estate of Irene Wang (collectively, the **"Wangs"**), and the United States of America's Memorandum of Law in opposition to the same. The Court, having reviewed the motion and memoranda, and being otherwise fully advised in the premises, determines that the motion should be denied.

### Background

On or about May 18, 1998, Angela Lynn Stanley, while married to Victor Wang, purchased certain real property located at 1001 Tocobaga Lane in Sarasota, Florida (the **"Tocobaga Property"**).[1] At his deposition, Victor Wang testified that Angela Stanley paid approximately $1.29 million in cash for the property with money he transferred to her, and that the property was purchased in her name only. In June of 1998, Victor Wang and Angela

---

[1] Angela Stanley is now known as Angela Lynn Oujiri following her divorce from Victor Wang.

Stanley obtained financing in the total principal amount of $1.36 million secured by two mortgages on the property.

On August 19, 1999, Victor Wang signed a Cooperation Agreement with the United States in United States v. Victor Wang, CR-99-0753 (E.D.N.Y.), in which he agreed to plead guilty to an information charging one count of conspiracy to commit securities fraud pursuant to 18 U.S.C. § 371, and one count of conspiracy to launder money pursuant to 18 U.S.C. § 1956(h). Pursuant to the Cooperation Agreement, Victor Wang agreed to consent to the entry of an order of forfeiture of $650,000.00 worth of certain assets. Victor Wang also acknowledged that he would have to pay restitution in an amount to be determined pursuant to 18 U.S.C. § 3663. On December 16, 1999, the Honorable Judge John Gleeson, United States District Court for the Eastern District of New York, entered a Preliminary Order of Forfeiture authorizing the United States to seize $650,000.00 from investment accounts held by Victor Wang and Angela Stanley.

On December 27, 2000, Victor Wang entered into a Superceding Cooperation Agreement in United States v. Victor Wang, CR-00-1119 (E.D.N.Y.). Pursuant to the Superseding Cooperation Agreement, Victor Wang agreed to plead guilty to another information charging conspiracy to commit securities fraud pursuant to 18 U.S.C. § 371.

On March 28, 2002, after Victor Wang pled guilty to conspiracy to commit securities fraud but prior to sentencing, he executed a quit-claim deed conveying his interest in the Tocobaga Property to himself and his mother, Irene Wang, as joint tenants with the right of

survivorship (hereinafter, the **"Tocobaga QC Deed"**). On April 29, 2002, Victor Wang recorded the Tocobaga QC Deed with the Clerk of Court of Sarasota County, Florida.

On December 13, 2002, Victor Wang was sentenced jointly in Case Nos. CR-99-0753 and CR-00-1119, and ordered to pay restitution in the amount of $11,129,582.00. On January 16, 2004, the United States recorded a notice of lien pursuant to the Mandatory Victims Restitution Act, codified in relevant part at 18 U.S.C. §3613 (the "MVRA"), with the Clerk of Court in Sarasota County. The lien encumbered the Tocobaga Property.

On September 8, 2005, Irene Wang sued the United States in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida, seeking a declaratory judgment regarding Irene Wang's interest in the Tocobaga Property. Later that month, on September 16, 2005, Irene Wang died. The United States removed the action to this Court on October 17, 2005 [2] (hereinafter referred to as "Wang I") and filed its Answer, Counterclaim and Third-Party Complaint on November 21, 2005. In addition to Counterclaims against Irene Wang, the answer asserted third-party claims against Victor Wang and James Wang, the widower of Irene Wang. In the Counterclaim and Third-Party Complaint, the United States asserted, among other claims, that Victor Wang's transfer by quitclaim of an interest in the Tocobaga Property to Irene Wang on March 28, 2002, was a fraudulent conveyance.

On or about November 30, 2005, the Tocobaga Property was sold to an independent buyer, Michael Vaccaro. Outstanding mortgages, property taxes, back child support as well

---

[2] See James Y.A. Wang, Executor of the Estate of Irene Wang and James Wang, Individually v. United States of America, 8:05-cv-1924-JSM-MSS.

as other liens were satisfied by payments tendered at the closing of the sale. The net proceeds of the sale, in the amount of $1,012,759.32, have been deposited with the Clerk pending a resolution of the dispute among the Wangs and the United States as to the interests, if any, of Irene Wang's estate, Victor Wang and/or James Wang in the proceeds from the sale of the Tocobaga Property.

On February 13, 2006, Plaintiffs, James Wang, as the executor of the estate of Irene Wang, and James Wang, individually, filed an Amended Complaint seeking declaratory judgment relief on behalf of Irene Wang's estate and James Wang by demanding the imposition of a constructive trust against the escrow proceeds from the sale of the Tocobaga Property. James Wang is Irene Wang's surviving husband and sole beneficiary of her estate and is currently a resident of the State of New York. On April 28, 2006, the United States filed an Answer, Counterclaim, and Third Party Complaint in response to the Amended Complaint, again asserting that Victor Wang's transfer of the Tocobaga Property to Irene Wang was a fraudulent conveyance. The United States also asserted that Irene Wang was unjustly enriched by the conveyance of the Tocobaga Property, and that the Wangs were unjustly enriched to the extent they received loan proceeds collateralized by the Tocobaga Property.

On July 28, 2006, James Wang, as personal representative of the estate of Irene Wang, filed an action against Victor Wang in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida. In that action, James Wang sought reformation of the Tocobaga QC Deed, arguing that the original intent of the parties was for the Tocobaga

Property be conveyed to Victor Wang and Irene Wang as joint tenants *without* the right of survivorship. James Wang argued further that the conveyance of the property as joint tenants *with* the right of survivorship was due to a scrivener's error and mutual mistake among the parties. The United States claims that it was not notified of the action for reformation of the deed until two months after the complaint was filed.[3] Upon receiving notice, the United States intervened in the action and removed it to this Court. The action for reformation of the Tocobaga QC Deed, James Y.A. Wang as Personal Representative of the Estate of Irene Wang v. Victor Wang, 8:07-cv-102-JSM-MSS, shall hereinafter be referred to as "Wang II."

The United States filed an Answer and Affirmative Defenses to the Complaint in Wang II, along with a Cross-Claim against Victor Wang and a Counterclaim against James A. Wang, as Executor of the Estate of Irene Wang, seeking a declaratory action to determine the status of the Tocobaga QC Deed. The United States argued that, to the extent the Tocobaga QC deed did not constitute a fraudulent conveyance, it must be enforced as written. In response, Victor Wang filed a Cross-Claim in the form of a declaratory action, claiming that the Tocobaga Property was his homestead property, and that as such all proceeds derived from its sale are protected from the government's lien pursuant to the Florida Constitution. The Court denied Victor Wang's Cross-Claim on August 24, 2007.

---

[3] The United States also claims that it was not provided notice of a prior motion for reformation of the deed filed with the Probate Division of the Twelfth Judicial Circuit in connection with the disposition of Irene Wang's estate. The probate judge dismissed the motion, finding that the claim for reformation was not a probate matter, and noted that the United States should be notified of any proceeding affecting its lien.

The Wangs have now moved for summary judgment as to Counts I-V of the United States' Counterclaim and Third Party Complaint filed in Wang I. The Wangs claim the United States has failed to produce evidence to support its claims for fraud and unjust enrichment.

## Discussion

### I. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.  Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.  Legal Analysis**

The Wangs argue that the circumstances surrounding the conveyance of the Tocobaga Property are not indicative of fraud.  On or about March 5, 2001, Victor Wang and Angela Stanley entered into a Marital Settlement Agreement whereby Angela Stanley relinquished all rights to the Tocobaga Property.  Victor Wang was ordered by a state court judge to remove Angela Stanley's name from the Tocobaga Property and all related mortgages.  The Wangs argue that, as Victor Wang was unemployed and unable to generate income, he was forced to convey the property to himself and his mother in order to finance the property and avoid foreclosure.  Following the conveyance, Victor Wang, Irene Wang, and James Wang executed a $1,337,500.00 mortgage on the Tocobaga Property in favor of Emigrant Mortgage

Co., Inc. (The **"Emigrant Mortgage"**), and Victor Wang and Irene Wang executed a $100,000.00 open-end mortgage in favor of Wachovia Bank (the **"Wachovia Mortgage"**). The loan proceeds secured by the Emigrant Mortgage were used to satisfy the existing mortgage loan obligations of Victor Wang and Angela Stanley.

Further, the Wangs argue that because the government was aware of the conveyance, discussed it at the time of Victor Wang's sentencing, and did not object to the removal of the property as an asset from Victor Wang's Pre-Sentence Report (the **"PSR"**), it should now be precluded from claiming the conveyance was fraudulent. During Victor Wang's sentencing before Judge Gleeson, Victor Wang's attorney, Lawrence Carra, asked the Court to remove the Tocobaga Property from the list of assets contained within the PSR. Footnote 7 on page 22 of the PSR stated the following regarding the Tocobaga Property:

> The Defendant apparently has a 50% ownership in this property. He advised that he transferred 50% of the ownership of this property to his mother in April of 2001, for zero consideration.

Regarding this footnote, Carra argued that:

> Mr. Wang is not the owner, nor the 50 percent owner of a premises in Florida. That premises went into foreclosure and Irene Wang, Mr. Wang's mother, obtained a full equity mortgage and upon the transfer for no consideration purchased the [Tocobaga Property]. That's Sarasota, Florida.

Transcript of Sentence held on December 13, 2002 (Dkt. 208-2, pp. 3-4).

Based on Carra's statement, and upon receiving no objection from the United States, Judge Gleeson agreed to strike the footnote and remove the Tocobaga Property from the list of Victor Wang's assets. The Wangs argue that, based on this discussion at the sentencing

hearing, the United States agreed that the property was no longer an "asset" of Victor Wang's. Further, the Wangs argue that by not objecting to the striking of the footnote, the United States accepted the conveyance of the Tocobaga Property as being with adequate consideration.

The United States argues, and the Court agrees, that the current record does not support the representations made by attorney Carra at the sentencing. Neither party has argued, nor has any evidence been presented, that Irene Wang ever possessed a 100 percent interest in the Tocobaga Property. Further, there is no record evidence that Irene Wang independently obtained a full equity mortgage, or that the Tocobaga Property was in foreclosure at the time of the conveyance. The fact that Judge Gleeson agreed, based on attorney Carra's comments, to strike the footnote and remove the Tocobaga Property from the list of assets does not amount to a ruling that the transfer of the Tocobaga Property was not fraudulent. Moreover, the United States did not waive its right to pursue its fraudulent transfer claims by failing to object to Carra's request.

The United States' Counterclaim and Third Party Complaint asserts claims for fraudulent transfer pursuant to 28 U.S.C. §§ 3304(b)(1)(A), 3304(b)(1)(B), and Fla. Stat. § 222.30(2). Pursuant to Section 3304(b)(1)(A), a transfer made or obligation incurred by a debtor as to a debt to the United States is fraudulent if the transfer is made or the obligation is incurred "with actual intent to hinder, delay, or defraud a creditor." Similarly, Fla. Stat. § 222.30 provides that the changing or disposing of an asset is a fraudulent conversion if

done with the intent to "hinder, delay, or defraud" a creditor. In determining actual intent under §§ 3304(b)(1)(A), consideration must be given to whether:

**(A)** the transfer or obligation was to an insider;

**(B)** the debtor retained possession or control of the property transferred after the transfer;

**(C)** the transfer or obligation was disclosed or concealed;

**(D)** before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

**(E)** the transfer was of substantially all the debtor's assets;

**(F)** the debtor absconded;

**(G)** the debtor removed or concealed assets;

**(H)** the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

**(I)** the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

**(J)** the transfer occurred shortly before or shortly after a substantial debt was incurred; and

**(K)** the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2). Pursuant to Section 3304(b)(2)(A), a transfer is fraudulent if it was made without receiving reasonably equivalent value in exchange for the transfer obligation if the debtor

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small . . . or (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The Court agrees with the United States that genuine issues of material fact exist as to whether Victor Wang intended to hinder, delay, or defraud the United States by conveying the Tocobaga Property to himself and his mother. Victor Wang transferred the property, in part, to an insider, his mother, and retained title to the house following the transfer. While the Wang's argue he did not retain possession or control of the property, he lived in the house for approximately one year after the transfer. Prior to the transfer, he pled guilty to charges of conspiracy to commit securities fraud and conspiracy to launder money. As a result, Victor Wang incurred a substantial debt, restitution in the amount of $11,129,582.00. Further, as acknowledged by both parties, Victor Wang was insolvent prior to the conveyance. It is evident that the transfer was of substantially all, or at a minimum a substantial portion, of Victor Wang's assets.[4]

The Wangs argue that Victor Wang received adequate consideration in a total amount of $1,437,500.00 for the conveyance of the Tocobaga Property as (i) the transfer satisfied a

---

[4]The Wangs argue that the Judge Gleeson specifically held that the Tocobaga Property was no longer an asset of Victor Wang. Even if the Court were to accept this position as true, Judge Gleeson did not address the issue until after the conveyance was made. Thus, there is no question that the Tocobaga Property was an asset of Victor Wang prior to the conveyance at issue.

$160,000.00 debt owed by Victor Wang to Irene Wang, as evidenced by two promissory notes that he allegedly gave her, and (ii) the loan proceeds obtained through James and Irene Wang's execution of the Emigrant and Wachovia Mortgages were used to satisfy loan obligations of Victor Wang's ex-wife. However, neither the promissory notes nor documentation evidencing payment of the underlying $160,000.00 have been submitted to the Court. The Wangs' expert witness, Sharelle Turner, CPA, CFE, testified at her deposition that she has not verified that any payments have been made as contemplated by the promissory notes. Furthermore, although Irene Wang was a co-borrower on the loans secured by the Emigrant and Wachovia Mortgages, Victor Wang remained jointly obligated on both loans.

During his deposition, Wang testified to giving his mother one of the promissory notes with a total principal amount of $110,000.00. His mother obtained the $110,000.00 to lend him by borrowing it from a Children's Investment Trust he had established for his daughter. In exchange for the funds, Irene Wang pledged jewelry as collateral. The transfer was authorized by attorney Carra, the trustee of the trust, who according to Victor Wang is still in possession of the jewelry.

Taking into consideration the facts referenced herein, the Court concludes the United States has raised genuine issues of material fact as to whether (i) Victor Wang intended to hinder, delay or defraud the United States, and (ii) Irene Wang paid adequate consideration for the conveyance of the Tocobaga Property. Accordingly, the Court determines that summary judgment is inappropriate as to Counts I-III of the United States' Counterclaim and

Third Party Complaint alleging fraudulent transfer. As the validity of the United States' claims for unjust enrichment depends on whether Irene Wang paid adequate consideration for the conveyance, the Court also denies the Wangs motion for summary judgment as to Counts IV and V.

It is therefore ORDERED AND ADJUDGED that:

1. The Wangs' Motion for Summary Judgment (Dkt. 208) filed in Case No. 8:05-cv-1924-JSM-MSS is **DENIED.**

2. The Wangs' Motion for Summary Judgment (Dkt 35) filed in Case No. 8:07-cv-102-JSM-MSS is **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on November 16, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1924.msj counterclaim.frm